# Kennedy *v.* Condran, Appellant.

*Partition—Equity—Equity practice—Real property—Act of April 22, 1856, P. L. 532, Sec. 10, as amended—Act of July 7, 1885, P. L. 257—Master's report—Sale.*

1. The Act of April 22, 1856, P. L. 532, Section 10, as amended by the Act of May 8, 1909, P. L. 489, providing that "in all cases of partition of real estate now pending or hereafter to be instituted in any court, wherein the valuation shall have been made of the whole or parts thereof, the same shall be allotted to such one or more of the parties in interest......who shall, at the return of the rule to accept or refuse to take at the valuation, offer in writing the highest price therefor above the valuation returned, but if no higher offer be made for such real estate or any part thereof it shall be allotted or ordered to be sold as provided by law," is of state-wide operation and there is no presumption, from the fact that the act was passed before the Courts of Common Pleas throughout the State were invested with equity powers, that it applies only to partition proceedings in the common law and Orphans' Courts; the terms of the act disclose the legislative intention to include in its operation all courts exercising jurisdiction in partition, and it applies to a proceeding in equity for partition.

2. The Act of July 7, 1885, P. L. 257, which confers on the Courts of Common Pleas all the power and jurisdiction of a Court of Equity in all cases of partition, and prescribes the method of procedure in such cases, does not repeal or supersede the Act of 1856. The Act of 1885 conferred no new powers on the courts in proceedings in partition but only provided a new court for the exercise of powers already possessed.

3. When in proceedings in equity for partition, the master has reported that the real estate can not be divided, and has fixed the valuation thereof, and each of the parties in interest desires to accept the real estate at the master's valuation, the master is not authorized, either by the Act of 1856, or by the Act of 1885, to require the parties to accept or refuse the property, or to permit them to bid therefor; proper practice requires that the facts should be reported to the court, which can then, under the Act of 1856 as amended, enter a rule on the parties in interest to accept or refuse the property at the master's valuation or show cause why the same should not be sold, and on the return of the rule

a sale in conformity with the provisions of the Act of 1885 may be ordered.

4. Where in such case each of the parties in interest. notified the master of his willingness to accept the property at the master's valuation, and the master filed an interlocutory report recommending that an order be made authorizing him to sell the real estate at public sale, the court erred in dismissing exceptions to the master's report and a decree confirming the master's report and ordering a sale of the real estate was reversed.

Argued Jan. 14, 1914. Appeal, No. 273, Jan. T., 1913, by defendant, from decree of C. P. No. 5, Philadelphia Co., March T., 1912, No. 2733, in Equity, directing the sale of real estate in partition proceedings in case of John D. Kennedy v. Edward F. Condran, and Grace M. Condran. Before MESTREZAT, POTTER, ELKIN, STEWART and MOSCHZISKER, JJ. Reversed.

Bill in equity for the partition of real estate. Exceptions to the report of Thos. Ridgway, Esq., master. Before RALSTON, J.

The opinion of the Supreme Court states the facts.

The court dismissed the exceptions. Edward F. Condran appealed.

*Errors assigned* were in dismissing the exceptions.

*Daniel C. Donoghue,* with him *W. Howard Ramsay,* for appellant.

*Chas. B. Joy,* with him *Wm. K. Camblos,* for appellees.

OPINION BY MR. JUSTICE MESTREZAT, February 23, 1914:

This is a bill in equity for the partition of the premises at the northeast corner of Thirteenth and Arch streets in the City of Philadelphia, held by the plaintiff and defendants as tenants in common. After a decree

for partition had been entered, the court referred the cause to a master who made a preliminary report that the real estate could not be divided without prejudice to or spoiling the whole, and fixed the valuation thereof at $125,000. The master notified the parties that the report would be filed in fifteen days if exceptions were not filed or, if within that time, a party in interest did not signify his intention to take the real estate at the valuation. Subsequently the master sent a second notice to the parties that he would be at his office at a date named when the parties could accept or refuse the real estate at the valuation, or present sealed bids for the property. On the day named in the notice, the three parties in interest appeared before the master and each party stated he accepted the real estate at the valuation. The master declined to allot the property to any of the parties and refused to receive sealed bids for it, and filed an interlocutory report recommending that an order be made authorizing him to sell the real estate at public sale. Exceptions were filed by one of the defendants to this report which were dismissed by the court, and a decree was entered confirming the report and directing the master to make sale of the real estate. The exceptant has taken this appeal from the decree.

This proceeding was instituted under the Act of July 7, 1885, P. L. 257, which confers on the Courts of Common Pleas throughout the State all the power and jurisdiction of a Court of Equity in all cases of partition, and prescribes the method of procedure in such cases. The act provides that after a decree in partition is made, the cause shall be referred to a master. He is authorized to divide the land into purparts, value the same, ascertain owelty charges, and make allotments of purparts with or without charges or award the charges to be paid to those to whom no purparts are allotted. The court can alter, correct, set aside or confirm the master's report and direct conveyance to be made vesting the legal title to the purparts in the parties to whom they are allotted.

The fifth section of the act, as amended by the Act of July 14, 1897, P. L. 268, provides that when the master has reported that the lands cannot be divided, "and the parties have refused to take the same at the valuation, then it shall be the duty of the said court to order the master to make sale thereof at public auction." The sixth section of the act requires the master to make return of the sale to the court, and if it shall be approved, the court shall direct the master to make a deed to the purchaser for the property sold.

The object of partition is the physical division of the premises among the several owners, and the statutes primarily provide for such division and then for the several contingencies that may arise in case that is impracticable: Wistar's App., 105 Pa. 390, 395. If the property cannot be divided into as many purparts as there are owners, it may be divided into a lesser number of purparts and owelty charged thereon in favor of those not receiving part of the land. If it cannot be divided at all, a sale of the premises must be awarded. A reference, however, to the several statutes regulating such proceedings in the common law courts as well as in the Orphans' Court shows that in no case can the premises be sold unless the parties refuse to take at the valuation. This is a prerequisite to a valid sale of the land, and therefore the parties must be given an opportunity to exercise their rights to accept or refuse the premises. The Act of 1885 conferring on the Common Pleas of the State jurisdiction of a Court of Equity in cases of partition, it will be observed, contains the same essential condition on which a sale of the premises may be made by providing that the court shall order the master to make a sale when the land cannot be divided "and the parties have refused to take the same at the valuation." The act, however, makes no provision for ascertaining whether the parties will accept or refuse the property or, if more than one desire to accept, to whom it shall be allotted. It is manifest that this is a serious omis-

sion unless it is aided by other legislation. No better illustration than that disclosed by this proceeding is needed to show that a sale of the land cannot be consummated under this act, when all the parties desire to accept at the valuation. Here, according to the report of the master, at the time and place fixed by him for the parties to appear and accept or refuse the real estate, "all three parties in interest were present and stated that they accepted said real estate at said valuation." He, of course, could not allot the property to each of them, and he "refused to discriminate between the parties and declined to allot" it to anyone. He properly held that he had no authority to receive sealed bids by the parties for the property, and "having ascertained that the parties will not submit to anyone taking at the master's valuation" he recommended a sale. This recommendation was directly in the teeth of the Act of 1885, and is not sustained by any statute. The parties did not refuse to accept the property at the valuation which is the only condition which could authorize the court to order a sale. If either of the parties is willing to accept, it deprives the court of jurisdiction to order a sale. This is true whether the proceeding is on the law or equity side of the court or in the Orphans' Court. It is apparent, therefore, that under the Act of 1885 and the facts reported by the master, that he had no authority to recommend and the court had no authority to decree a sale of the property.

The Act of April 22, 1856, P. L. 532, amended by the Act of May 8, 1909, P. L. 489, meets the situation presented here, and we are of opinion that it is applicable to proceedings in partition in equity instituted under the Act of 1885. The tenth section of the act as amended provides as follows: "In all cases of partition of real estate now pending, or hereafter to be instituted, in any court wherein a valuation shall have been made of the whole or parts thereof, the same shall be allotted to such one or more of the parties in interest, including

the widow of the decedent, who shall, at the return of the rule to accept or refuse to take at the valuation, offer in writing the highest price therefor above the valuation returned; but if no higher offer be made for such real estate or any part thereof, it shall be allotted or ordered to be sold as provided by law." It will be observed that the act applies "in all cases of partition of real estate......in any court." The learned master held that the act did not apply to proceedings in partition in equity, and that "the Act of 1885 supersedes the Act of 1856 in respect to equity partition and authorizes the master to ascertain whether the parties will take at the valuation, in place of the requirement of the old act that the court should issue a rule, receive offers, etc." This ruling is conclusively demonstrated to be erroneous by the master himself in this case who held he had no authority to receive sealed bids, and declined to allot the property at the valuation although all the parties elected to accept it. We have already pointed out that the Act of 1885 makes no provision for determining whether the parties will refuse the property at the valuation which is a condition precedent to the right of the court to order a sale. There is, therefore, no conflict between the two acts in this respect, and hence the later does not repeal or "supersede" the earlier act. The Act of 1885 contains no repealing clause. The learned counsel for the appellee contends that the Act of 1856 is not applicable in proceedings in equity because (a) it was passed to correct evils arising under former partition legislation, (b) there is no necessity for the application of the act to proceedings in partition in equity, and (c) when the act was passed equity jurisdiction had not been extended throughout the State and as the act is by its terms state-wide the presumption is that it was intended it should only apply to partition in the Common Pleas and Orphans' Courts. It may be conceded that the Act of 1856 was passed for remedial purposes but it unquestionably established a method of procedure,

"in all cases of partition of real estate in any court" wherein a valuation was made of the whole or part thereof. Whatever, therefore, may have been the primary purpose of the act, its language is sufficiently comprehensive to make it applicable to partition proceedings in all courts having jurisdiction of the subject. Prior to the Act of 1885 it is clear that the Act of 1856 applied to proceedings in partition in all courts having jurisdiction, and we have held that the later act conferred no new powers on the courts in proceedings in partition but only provided a new court for the exercise of powers already possessed: Doyle v. Brundred, 189 Pa. 113.

That there is an absolute necessity for the application of the act in proceedings in partition on the equity side of the court has already been shown. It is true that the act is state-wide in its operation, but it does not follow, as contended, that there is a presumption that it applies only to the common law and Orphans' Courts which had, at the date of the passage of the Act of 1885, jurisdiction in partition throughout the State. This would be a forced construction of the statute and a judicial interpretation directly opposed to its language which makes it applicable "in all cases of partition of real estate in any court." At the time the act was passed the Supreme Court for the Eastern District of the State and the Common Pleas of Philadelphia County had the power and jurisdiction of a court of equity in cases of partition, and the act manifestly applied to partition proceedings in those courts. Its broad terms show that the legislative intention was to include all courts exercising jurisdiction in such cases. It may be added that the appeal in the case at bar comes from the Common Pleas of Philadelphia County sitting in equity which has had jurisdiction in partition cases since 1845, and, therefore, when the Act of 1856 was passed.

The contention that the Act of 1885 furnishes a com-

plete system for the partition of real estate in courts of equity cannot be sustained. This is apparent from the act itself. The second section provides that owelty shall be paid or secured "in the manner now authorized by law, under writs of partition issued out of the courts of common law." The fifth section provides that in making sale of the premises such notice shall be given as "is required in sales under proceedings in partition in the common law courts." As already observed, the act makes no provision in cases like the present where all the parties desire to take the property at the valuation. The master is not authorized to issue a rule requiring the parties to accept or refuse the property or to permit them to bid on the return of the rule. The purpose of the statute was, as said in Doyle v. Brundred, 189 Pa. 113, simply to provide a new court for the exercise of powers in partition already possessed. Among the powers possessed by the several courts exercising jurisdiction in such cases were those conferred by the Act of 1856.

All that was decided in Hanna v. Clark, 204 Pa. 149, bearing on the question before us, was that the Act of 1885 "contains no provision for bidding on purparts" before the master appointed by the court to make partition. That is certainly correct, and is so argued by the appellee here. It was not held that the Act of 1856 does not apply to partition proceedings in equity which is the question under consideration on this appeal. The report of the case of Palethorp v. Palethorp, 198 Pa. 395, is brief and unsatisfactory, and if it can be construed to support the proceeding in the court below in this case we are not disposed to follow it.

The learned master having found that the property could not be divided and having valued the same as required by the Act of 1885, should have reported these facts to the court. It would then have been the duty of the court, under the Act of 1856, as amended by the act of 1909, to enter a rule on the parties in interest to ac-

cept or refuse the property at the valuation or show cause why the same should not be sold. If on the return of the rule the property was not accepted at the valuation by the parties in interest, the court should have ordered the master to make a sale in conformity with the provisions of the Act of 1885. The proper practice in such cases under the Act of 1856 is discussed and clearly pointed out by Mr. Justice STERRETT in Eyerman v. Detwiller, 136 Pa. 285.

The decree is reversed, and the proceedings subsequent to the finding of the master that the premises could not be divided and placing a value thereon are vacated and set aside, with a procedendo.