## Nesbitt v. Letz Hunting Club

*H. Moskowitz*, for plaintiff.

*V. N. Pisciotta*, for defendant.

CHUDOFF, J., December 12, 1960.—William Stewart Nesbitt, hereinafter referred to as plaintiff, filed a complaint in equity against Letz Hunting Club, an unincorporated association, hereinafter referred to as defendant, averring, inter alia, as follows:

That on or about July 22, 1957, Charles Eaton, then a member of Letz Hunting Club, and having been such member since its organization, executed and delivered to plaintiff an indenture covering all of his right, title and interest in and to Letz Hunting Club; that since July 22, 1957, plaintiff has made frequent requests of defendant to be permitted to use, enjoy, preserve and protect the right, title and interest conveyed to him by Charles Eaton, but that defendant has refused and denied all such requests; that it was the agreement of the members of the club that it was the right of each of them to designate a successor by deed or will, and to transfer and convey to such successor all of the right, title and interest of such

transferring member, and that such transfer constituted such designation of the transferee as a successor member.

In his prayer for relief, plaintiff seeks an accounting of defendant's financial status, a decree ordering that the club be terminated, and a receiver be appointed to take charge of the assets of the club, and an injunction restraining the club, its agents, servants and employes, from collecting and/or receiving any debits and/or moneys due and owing to the club.

An answer was duly filed by defendant in which it denied, inter alia, that it was at any time the agreement or understanding of the members of the club that it was the right of each of them to designate a successor by deed or will. On the contrary, defendant averred that it was specifically agreed by all members at all times that no member would have the right to designate a successor member and, further, that no new members were to be admitted, either by deed, will or any other manner, without the express unanimous consent of all members of the club. Defendant further averred that since July 22, 1957, plaintiff has been permitted to enjoy all the uses of the club during the hunting season as a guest, but defendant has denied plaintiff the right to participate in meetings or the right of membership, which plaintiff had requested, for the reason that he has never been admitted as a member and, further, that the indenture conveying all of Charles Eaton's right, title and interest to plaintiff does not convey a right to membership, and, therefore, plaintiff has no standing as a member.

This, in essence, is the basis for the action upon which defendant prays that the chancellor dismiss plaintiff's complaint.

From the admissions in the pleadings, depositions, and testimony adduced in open court, we make the following

## Findings of Fact

1. Defendant, Letz Hunting Club, is an unincorporated association, organized in December 1935, and is still in existence.

2. The purposes at the time of the club's creation, and at present, are for engaging and associating together in game hunting. . . .

5. From its inception, defendant has never had, nor has it ever adopted, a formal written constitution, articles of association, or set of bylaws.

6. In December 1935, the eight original members held their first meeting at the club house, located in Greene Township, Pike County. All eight members were in attendance. . . .

12. There has never been any new member or members admitted into defendant since its formation, nor has any member ever attempted to transfer his membership to another, other than the said Charles Eaton.

13. On July 22, 1957, Charles Eaton, a member in good standing of defendant, executed and delivered an indenture to plaintiff covering all of his right, title and interest in and to Letz Hunting Club, the indenture having been recorded in the office for the recording of deeds in Pike County in deed book 138, page 73, on October 21, 1957.

14. There is no rule, agreement, regulation or understanding that permits or gives the right to any member of defendant to designate a successor-member by deed or will.

15. Since receiving the indenture from Charles Eaton, now deceased, plaintiff has requested membership in defendant-club. He desires to participate in meetings and the affairs of defendant, but has been denied same. . . .

## Discussion

There are some facts in this case as established by plaintiff which appeal with a good deal of strength to

the equity side of the court, and the court would be inclined to grant the relief asked for, except that we are satisfied that there are insuperable legal objections in the way of granting such relief.

Defendant produced six witnesses at the trial of this case, all of whom testified without equivocation that membership in Letz Hunting Club was to be limited to the eight original members. More important, however, is the fact that the eight original members all agreed by means of an unwritten rule or resolution that the membership of a member died with the death of that member, and that no new members would be admitted without the unanimous consent of the members of the club.

While it was obvious to the chancellor that strong animosity had developed over the years between August Wilson and Fred Hess, Sr., thereby casting shadows upon the credibility and belief of their testimony, on the other hand, we found H. Allen Wood to be a witness worthy of belief and completely unbiased. H. Allen Wood was an original member of the club when founded in 1935. His membership was terminated and he was expelled, according to his own testimony, because of "too much drinking on my part and a little misunderstanding." He further testified that he never attempted to transfer his membership to any person because of the rule prohibiting it and, further, that he abided by this rule. Moreover, another witness, George Illgas, testified that he had asked to become a member in the presence of Fred Hess, Sr., and August Wilson, and was refused because of one of the rules of the club regarding admission for membership.

Notwithstanding the fact that the preponderance of the evidence weighs heavily in favor of the adoption of the rules relative to membership as set forth, plaintiff vigorously contends that he is a member of defendant by succession to the proprietary interests of

Charles Eaton, upon receipt of the indenture on July 22, 1957. The court cannot agree.

An "association" is defined to be a body of persons acting together without a charter, but upon the methods and forms used by an incorporated body for the prosecution of some common enterprise; and a "club" is defined as a "voluntary association of persons for purposes of a social, literary or political nature, and may be either incorporated or unincorporated": 3 P. L. Encyc. 279. These definitions seem to fully describe the organization into which these parties entered. It is true that these associations are usually formed for some patriotic or social purposes such as charitable associations, patriotic associations, etc. Nevertheless, the accepted definition of an "association" is broad enough to cover any such organization not created for the purpose of doing business for a profit.

It seems to be the unanimous view of the courts and of the text writers that membership in such an association is not transferable, at least without the consent of the association itself: 7 C. J. S. 70, section 27, Blenko v. Schmeltz, 362 Pa. 365; SKF Employees Association v. Root, 57 D. & C. 12; Ostrom v. Greene, 161 N. Y. 353, 55 N. E. 919; Burt v. Oneida Community, 137 N. Y. 346, 33 N. E. 307, 19 L. R. A. 297.

Such "membership . . . is a privilege which the society may accord or withhold at its pleasure, and a court of equity will not interfere to compel the admission of a person not regularly elected, even though the arbitrary rejection of the candidate may prejudice his material interests, where no rights of property or of person are affected, and no rights of citizenship are infringed upon": 5 C. J. sec. 64, page 1353. A long list of authorities is there cited in support of the rule just stated.

There is no evidence in this case to show that this club ever took any action admitting plaintiff to mem-

bership therein, and no such claim was made. On the contrary, the evidence in this case all shows that the club and its members were unwilling that plaintiff should become a member or should have the benefits of the organization or its property.

Plaintiff's claim rests solely upon the legal contention that he purchased the interest of Charles Eaton and thereby became a tenant in common with the other members of the club in its property and entitled to use it as one tenant in common may use property held by himself and others in such tenancy; but the uniform weight of authority is that in such an association its property is not held by the members as tenants in common, but as joint tenants.

We are unable to find and the chancellor's attention has not been called by counsel to any reported case or to any text book which holds that the property of a voluntary association is held by its members as tenants in common.

In the leading and often cited case of Burt v. Oneida Community, supra, it was distinctly held that a member withdrawing from the association had no redress against the other members of the association sofar as property rights were concerned. In Dutrow v. Bohn, 15 D. & C. 2d 779, C. P. of Clinton County, the court said, at page 781:

"An unincorporated association is not a separate entity and has no existence apart from the members who compose it: 13 Standard Pa. Practice 48. Any property acquired by an unincorporated association ordinarily is vested in the members of the association *jointly*. This right of property rests on agreement between the members and hence appropriate provision relating thereto may be made by agreement between them or by the adoption of a constitution or other rules: 3 P. L. Encyc. 268; Usiak v. Milnesville Water Co-op., 42 Luz. 171." (Italics supplied.)

And, in Ostrom v. Greene, supra, the court said: "The right to membership was not transferable."

In 25 Am. Enc. Law, page 1132, it is said:

"The title, legal or equitable, to any property acquired for the use of such an association vests not in the association as such, but in the members thereof in their joint and associated capacity."

In other words, a voluntary association has no separate entity, its property is deemed to be in the joint ownership of the members, who have, consequently, the right to manage, control and dispose of it at their pleasure, subject, however, to the provisions and stipulations of the contract under which it is held, as contained in the constitution, bylaws, or other rules and regulations adopted by the society.

In view of this well-settled law and the rules and regulations adopted by defendant at its first meeting in December 1935, any rights of membership that Charles Eaton might have acquired or owned in defendant club or property are personal to him and neither incident nor appurtenant to land owned or occupied by him. It follows further that the conveyance from Charles Eaton to plaintiff did not carry with it any interest in defendant's property located in Greene Township, Pike County, nor the right of membership in defendant club. To find, as defendant's counsel has suggested, that plaintiff has a one-sixth interest in the real estate conveyed to August Wilson and Fred Hess, Jr., as trustees for defendant, would be tantamount to a finding that title to the real estate is held as tenants in common, which is contrary to the general law and the evidence found to be true by the fact finder.

This defendant had no constitution or bylaws. At any meeting, therefore, it had the right to adopt such rules as it saw fit, except it could not do an illegal act or adopt any measure subversive to the objects for which it was formed: Ostrom v. Greene, supra. The legality of the meeting held in December 1935, at

which the rule or resolution referred to was adopted, regarding admission to membership, cannot be questioned. All eight of the members were present and the regulation was adopted without opposition. Defendant had jurisdiction of the subject matter of the resolution. It is not the province of the courts to pass upon the wisdom or fairness of the policy indicated in the resolution, so long as it attempted nothing subversive of the purposes for which defendant was organized.

The Letz Hunting Club, and other similar organizations, are formed for the purposes mutually agreed upon; their right to make rules, regulations and resolutions for the admission of members and the transaction of business is unquestionable; they may require such qualifications for membership and such formalities of election as they may choose; they may restrict membership to the original promoters, or limit the number to be thereafter admitted. A power to require the admission of a person in any way objectionable to the club is repugnant to the scheme of its organization. While courts have interfered to inquire into and restrain the action of such societies in the attempted exclusion of persons who have been regularly admitted to membership, no case can, we think, be found where the power of any court has been exercised, as sought in this case, to require the admission of any member to original membership in any such voluntary association. Our courts exist to protect rights, and where the right has once attached they will interfere to prevent its violation. But, no person has any abstract right to be admitted to such membership; that depends solely upon the action of the society or club exercised in accordance with its regulations and until so admitted no right exists which the courts can be called upon to protect or enforce. See McKane v. Adams, 123 N. Y. 609, 25 N. E. 1057; Mayer v. Journeymen Stonecutters Assn., 47 N. J. Eq. 519, 20 Atl. 492.

Wherefore, the court makes the following

## Conclusions of Law

1. The court has jurisdiction of the parties and the subject matter.

2. Defendant, Letz Hunting Club, an unincorporated association, has the power to make and adopt oral rules and regulations, regulating the rights of its members, the conduct of its members, and rules affecting admission of new members.

3. All property of Letz Hunting Club is held by all members jointly, and not as tenants in common.

4. Plaintiff is not a member of Letz Hunting Club, nor does he have any rights or privileges of a member.

5. Plaintiff has no proprietary interest in any property, real or personal, of Letz Hunting Club.

6. Membership in a voluntary association is not transferable.

7. A court of equity cannot and will not interfere to compel the admission of persons in an unincorporated association, who are not regularly elected.

8. The evidence does not warrant the appointment of a receiver.

9. The evidence produced by plaintiff does not give him the right to have the business and affairs of defendant terminated or dissolved.

10. The indenture dated July 22, 1957, executed and delivered by Charles Eaton, now deceased, to plaintiff, William Stewart Nesbitt, covering all of his right, title and interest in and to the Letz Hunting Club, and recorded in the Office for Recording of Deeds in and for the County of Pike, Commonwealth of Pennsylvania, in deed book 138, page 73, on October 21, 1957, is null and void and should be stricken from the record.

## Decree Nisi

And now, December 12, 1960, upon consideration of the foregoing case, it is ordered, adjudged and decreed as follows:

1. Plaintiff is not entitled to any relief prayed for in his complaint.

2. The complaint is dismissed.

3. All costs are assessed against plaintiff, except as hereinafter set forth.

4. The prothonotary shall enter this decree nisi and give notice to the parties or their counsel of record of the entry of the decree, and if no exceptions are filed within 20 days this decree shall be entered as a final decree herein by the prothonotary upon praecipe of either party.

5. If, as and when this decree nisi shall become final, the prothonotary shall forthwith transmit, at the cost of defendant, a certified copy of this decree to the Recorder of Deeds, County of Pike, Commonwealth of Pennsylvania, for the purpose of having the recorder of deeds of said county mark the indenture dated July 22, 1957, and recorded in deed book 138, page 73, on October 21, 1957, null and void, and for the purpose of striking the aforesaid indenture from his records.