Cloyd BARGO and Joel Bargo, Members of the Coramike Sportsmen Club aka Cora–Mike Rod & Gun Club, Appellants

v.

Lynn H. KUHNS, Sam R. Peters, Bryne Bargo, Thomas Wilson, Mark S. Bargo, Bob Douglas, The Remaining Members of the Coramike Sportsmen Club aka Cora–Mike Rod & Gun Club, Appellees.

Superior Court of Pennsylvania.

Submitted July 21, 2014.

Filed Aug. 19, 2014.

Karen C. Cahilly, Coudersport, for Bargo, C. and Bargo, J., appellants.

Wayne M. Pecht, Lemoyne, for Bargo, B., Douglas, Kuhns, Peters and Wilson, appellees.

Marks S. Bargo, appellee, pro se.

BEFORE: FORD ELLIOTT, P.J.E., SHOGAN, and ALLEN, JJ.

OPINION BY ALLEN, J.:

Cloyd and Joel Bargo, members of the Coramike Sportsmen Club, a.k.a. Cora–Mike Rod & Gun Club, ("Appellants"), appeal from the order sustaining the preliminary objections filed by Lynn H. Kuhns, Sam R. Peters, Bryne Bargo, Thomas Wilson, Mark S. Bargo, and Bob Douglas, the remaining members of the Coramike Sportsmen Club, a.k.a. Cora–Mike Rod & Gun Club, (collectively "Coramike"). We affirm.

The trial court detailed the factual history and posture of this case as follows:

[Appellants] are members of a hunting club known as [Coramike]. The above-captioned cause of action was initiated by [Appellants] to partition a parcel of real property comprising approximately 1.0332 acres located in Abbott Township, Potter County, Pennsylvania.

The 1.03 acre parcel of land was purchased in 1956 by Cloyd Bargo, and two other individuals, Forrest Aurand and Howard Emery, both deceased, to hold in trust for all members of [Coramike]. Cloyd Bargo is the only surviving trustee of [Coramike] whose name is recorded on the 1956 deed.

[Coramike] adopted bylaws which were revised in 2011. Article One of said Bylaws indicates: "Each member in good standing—shall be considered as having an equal share in the rights and ownership of the property, and shall be entitled to equal privileges as afforded thereby." Cloyd Bargo alleges to be a member in good standing and has paid club dues annually since 1956 as required by Article Three of the Bylaws. Joel Bargo also alleges to be a member in good standing and has paid club dues since 1988.

Without alleging any specific act, [Appellants] claim that certain "oppressive acts" have been committed by the other members of [Coramike] and [Appellants'] rights under the Bylaws have been infringed upon. [Appellants] go on to allege that [Coramike] ha[s] misrepresented facts, and/or intimidated [Appellants] with the intention of coercing [Appellants] to liquidate their membership in [Coramike] and their respective interests in the subject property. [Appellants] further claim that although they have attempted to resolve their

conflict with [Coramike], they have been unable to come to a resolution under the club's Bylaws.

[Appellants] allege that under the Bylaws and the deed, each member of [Coramike] holds an undivided one-eighth interest in the 1.03 acre parcel. [Appellants] allege that the parcel has a tax-assessment value of $6,920.00, and an estimated fair market value of approximately $21,369.60. [Appellants] are asking the Court to order a sale of the parcel of land for the purpose of partitioning the property and the division of money between club members.

[Coramike] ha[s] brought this present preliminary objection in the form of a *demurrer.* [Coramike] contend[s] that the property is not owned by the members of [Coramike] as cotenants, which would be necessary for an action in partition, but that the property is owned by a single entity, namely [Coramike]. For this reason, [Coramike] aver[s] that partition is not an available remedy and [Appellants] have failed to state a cause of action f[or] which relief may be granted.

Trial Court Opinion and Order, 2/21/14, at 1–3.

On February 21, 2014, the trial court entered an opinion and order sustaining Coramike's preliminary objection in the nature of a demurrer and dismissing Appellants' complaint. Appellants filed a timely notice of appeal on March 19, 2014. On March 21, 2014, the trial court ordered Appellants to file a concise statement of errors complained of on appeal, and Appellants complied on April 3, 2014. On April 8, 2014, the trial court entered an order expressing that its "reasoning for its Order is succinctly stated in its Opinion dated February 21, 2014." Opinion in Support of Order, 4/8/14, at 1.

Appellants present the following questions for our review:

1. Did the lower court commit an error of law or an abuse of discretion by sustaining [Coramike's] Preliminary Objection upon grounds that no co-tenancy existed in reliance upon a **bright-line rule** that;

 *"Because an unincorporated association cannot take title to property, those taking in the name of such an association take so in trust for the benefits of all members ... [A]s such, [Appellants] cannot be considered an owner in co-tenancy with the other members of Coramike Sportsmen Club."* **Cm Pls Opinion and Order,** at page 6.

 ; purported by [Coramike] to have been set forth in *Krumbine v. Lebanon County?*

2. Did the lower court commit an error of law or an abuse of discretion when the court sustained [Coramike's] Preliminary Objection on grounds that no co-tenancy existed in the present matter, after applying those rules set forth in *Fuhrman v. Doll,* 305 Pa.Super. 277, 451 A.2d 530 (1982), pertaining to the analysis of *agreements, constitutions or rules* of the parties at the preliminary objection phase?

3. Did the lower court commit an error of law or an abuse of discretion when it sustained [Coramike's] Preliminary Objection and dismissed [Appellants'] Complaint for **"Failure to State a Cause of Action"** when [Appellants'] **Complaint set forth averments** which included (a) a description of the property and (b) a statement of the nature and extent of the interest of each party in the property, pursuant to **Pa.R.C.P. Rule 1554?**

4. Did the lower court commit an error of law or an abuse of discretion when

it <u>failed to deem as admitted,</u> all well-pleaded material facts (in [Appellants'] Complaint) and any inferences reasonably deduced therefrom, that [Appellants] as members of the association are cotenants to the property owned by the association pursuant to agreement of the members, but rather accepted as true, [Coramike's] averments at the time of hearing on Preliminary Objections, that [Coramike] was <u>an incorporated association that could not own property</u> that the conveyance to Grantees was "<u>in trust for all members</u> *of [Coramike]* ", and therefore [Appellants] could not claim co-tenancy, even though [Appellants] are members and Plaintiff Cloyd Bargo is the sole surviving trustee on the subject deed?

5. Did the lower court commit an error of law or an abuse of discretion when i[t] sustained [Coramike's] Preliminary Objection in the nature of a *demurrer* without giving [Appellants] an **opportunity to amend** their complaint?

Appellants' Brief at 15–17 (bold, italics and underlining in original).

 All of Appellants' issues are interrelated in their challenge to the trial court's order sustaining Coramike's preliminary objections in the nature of a demurrer and dismissing Appellants' complaint. Therefore, we address Appellants' issues together. In examining Appellants' challenge, we recognize:

As a trial court's decision to grant or deny a demurrer involves a matter of law, our standard for reviewing that decision is plenary. Preliminary objections in the nature of demurrers are proper when the law is clear that a plaintiff is not entitled to recovery based on the facts alleged in the complaint. Moreover, when considering a motion for a demurrer, the trial court must accept as true all well-pleaded material facts set forth in the complaint and all inferences fairly deducible from those facts.

*Yocca v. Pittsburgh Steelers Sports, Inc.,* 578 Pa. 479, 854 A.2d 425, 436 (2004) (citations and internal quotation marks omitted). *Accord, Friedman v. Corbett,* 620 Pa. 569, 72 A.3d 255, 257 n. 2 (2013). Furthermore,

Our standard of review of an order of the trial court overruling or granting preliminary objections is to determine whether the trial court committed an error of law. When considering the appropriateness of a ruling on preliminary objections, the appellate court must apply the same standard as the trial court.

Preliminary objections in the nature of a demurrer test the legal sufficiency of the complaint.... Preliminary objections which seek the dismissal of a cause of action should be sustained only in cases in which it is clear and free from doubt that the pleader will be unable to prove facts legally sufficient to establish the right to relief. If any doubt exists as to whether a demurrer should be sustained, it should be resolved in favor of overruling the preliminary objections.

*Joyce v. Erie Ins. Exch.,* 74 A.3d 157, 162 (Pa.Super.2013) (citation omitted).

*Little Mountain Community Ass'n, Inc. v. Southern Columbia Corp.,* 92 A.3d 1191, 1195 (Pa.Super.2014).

██ We further note:

Partition of real property is governed by the Rules of Civil Procedure. *See* Pa.R.C.P. 1551–75[,] [which is] a question concerning interpretation of these Rules, and thus is a question of law. Therefore, our standard of review is *de*

*novo.* *LaRue v. McGuire,* 885 A.2d 549, 553 (Pa.Super.2005).[ ]

Our interpretation of the Rules of Civil Procedure must be guided by Rule 127, which provides, in relevant part, as follows:

> **Rule 127.** **Construction of Rules. Intent of Supreme Court Controls**
>
> (a) The object of all interpretation and construction of rules is to ascertain and effectuate the intention of the Supreme Court.
>
> (b) Every rule shall be construed, if possible, to give effect to all its provisions. *When the words of a rule are clear and free from all ambiguity, the letter of it is not to be disregarded* under the pretext of pursuing its spirit.

Pa.R.C.P. 127 (cited in *LaRue, supra*) (emphasis added).

*Bernstein v. Sherman,* 902 A.2d 1276, 1278 (Pa.Super.2006).

The partition rules provide in pertinent part:

> **Rule 1553. Parties**
>
> An action for partition may be brought by any one or more co-tenants. All other co-tenants shall be joined as defendants.
>
> **Rule 1554. Specific Averments**
>
> The complaint shall include
>
> (a) a description of the property and
>
> (b) a statement of the nature and extent of the interest of each party in the property.

Pa.R.C.P. 1553 and 1554.

In sustaining Coramike's preliminary objections, the trial court explained:

> "Partition is a possessory action; its purpose and effect being to give each of a number of joint owners the possession he is entitled to or his share in severalty." *Fry v. Stetson,* 370 Pa. 132, 135, 87

A.2d 305, 307 (1952), *quoting Johnson v. Gaul,* 228 Pa. 75, 77 A. 399, 400 (1910). "The purpose of partition is to afford those individuals who no longer wish to be owners the opportunity to divest themselves for a fair consideration." *Beall v. Hare,* 405 Pa. 288, 292, 174 A.2d 847, 849 (1961). Furthermore, "[i]t is an adversary action and its proceedings are compulsory. The rule is that the right to partition is an incident of a tenancy in common, and an absolute right." *Bernstein v. Sherman,* 902 A.2d 1276, 1278 (Pa.Super.2006), *quoting Lombardo v. DeMarco,* 350 Pa.Super. 490, 504 A.2d 1256, 1260 (1985).

It is the position of [Coramike] that although partition is an appropriate remedy for those holding interest in property as tenants in common, Pennsylvania law generally prohibits an unincorporated association to hold legal title in property, thus, individual members of unincorporated associations are precluded from partitioning the property. [Coramike] ha[s] cited *Fuhrman v. Doll,* 305 Pa.Super. 277, 451 A.2d 530 (1982), to support this position.

\* \* \*

The [trial c]ourt agrees. Similar to the facts outlined in *Fuhrman,* Cloyd Bargo, a Plaintiff in the present case, purchased a 1.03 acre parcel of land together with Forrest Aurand and Howard Emery, to hold in trust for all members of [Coramike]. Cloyd Bargo is the only surviving trustee of [Coramike] whose name is recorded on the 1956 deed. [Coramike] adopted bylaws which state in part: "Each member in good standing—shall be considered as having an equal share in the rights and ownership of the property, and shall be entitled to equal privileges as afforded thereby." Hence, Cloyd Bargo, along with Forrest Aurand and Howard Em-

ery, purchased the property in trust to hold for the equal enjoyment of all due-paying-members of [Coramike].

Trial Court Opinion and Order, 2/21/14, at 4–6.

In denying Appellants the opportunity to amend their complaint, the trial court further explained:

> [Appellants] argue that they have provided well-pleaded material facts that each member owns an undivided interest in the subject property by virtue of the deed and this is further evidenced by the language in the Bylaws which states: "Each member [of the Club] in good standing ⸺shall be considered as having an equal share in the rights and ownership of the property...." They have cited *Rice v. Rice*, 468 Pa. 1, 359 A.2d 782 (1967 [1976]), to support their position.
>
> * * *
>
> *Rice* is distinguishable from the case at bar in that the parties in *Rice* were owners of the disputed property as tenants in common, unlike the present case where the parties hold the property in trust for [Coramike]. In *Rice*, the trial court had ruled that plaintiff was entitled to a partition because he was a cotenant along with the defendants of the land and certain language contained in the deed was found by the court to be unenforceable as an unreasonable restraint on alienation, unlike the present case where the parties are not cotenants. Furthermore, as was the situation in *Fuhrman*, the conveyance of the subject property to Cloyd Bargo, Forrest Aurand and Howard Emery, was conveyed to hold in trust for all members of [Coramike]. Thus, as the *Fuhrman* Court held, the taking of the title to the land in the names of individuals as "Trustees" for [Coramike], together with the adopted bylaws, "makes it apparent

that the property [is] held by the named grantees for the benefit of the present and future membership of the club and was not meant to convey to each grantee all the rights and incidents of a tenancy in common or joint tenancy." *Id.* at 531.

Trial Court Opinion and Order, 2/21/14, at 7–8.

Our *de novo* review of the record *in toto* supports the trial court's determination that Appellants are not entitled to partition the land and that no amendment would entitle Appellants to relief, because while Appellants "may have other claims available to them, ... as pled, they have no claim against [Coramike] for partition." Order, 2/21/14, at 1.

■ The deed provides in pertinent part:

> Between Cora Frazier, Widow, of Cross Fork, Pa., GRANTOR, AND Forrest D. Aurand, Howard M. Emery and Cloyd Bargo **as Trustees for the members of the Coramike Sportsman Club,** to the survivor of them or to their successors in title, GRANTEES.

Complaint, 9/16/13, Exhibit A, Deed dated 6/23/56, at 1 (emphasis supplied). The deed's language clearly and unambiguously conveys the land to the grantees *as trustees* for the members of Coramike, not as cotenants. Because the language of the deed is plain and unambiguous, we cannot imbue meaning to its terms with parol evidence to create a cotenancy. *See Doman v. Brogan*, 405 Pa.Super. 254, 592 A.2d 104, 108–109 (1991) *citing In re Conveyance of Land Belonging to the City of DuBois*, 461 Pa. 161, 335 A.2d 352 (1975) ("where language is unambiguous, parties' intentions must be derived solely from written document"). Our position remains unchanged even were we to construe the deed as a trust document. *See Factor v. Getz*, 442 Pa. 384, 276 A.2d 511, 512 (1971)

citing *In re Pew's Trust Estate,* 411 Pa. 96, 191 A.2d 399 (1963) ("When the terms of a written trust instrument are clear and certain, parol or extrinsic evidence is not admissible to explain the settlor's intent.").

We expounded in *Fuhrman v. Doll,* 305 Pa.Super. 277, 451 A.2d 530 (1982), as follows:

Resolution of the question of entitlement to partition does not simply depend upon whether the ownership of land is as joint tenants or tenants in common, for under Pennsylvania law in proper circumstances property held in either designation may be partitioned. *See Larendon Estate,* 439 Pa. 535, 266 A.2d 763 (1970); *Masgai v. Masgai,* 460 Pa. 453, 333 A.2d 861 (1975); 28 P.L.E. Partition § 22–24; Ladner on Conveyancing in Pennsylvania, Revised Fourth Edition (1979) § 1.06.

Even property held as tenants by the entireties may be partitioned if there has been conduct on the part of one owner which amounts to an offer to terminate the entireties relationship. *See Stemniski v. Stemniski,* 403 Pa. 38, 169 A.2d 51 (1961); *Lindenfelser v. Lindenfelser,* 396 Pa. 530, 153 A.2d 901 (1959); *DeLuca v. DeLuca,* 388 Pa. 167, 130 A.2d 179 (1957).

Nor do we think that the proper analysis in this case is whether or not the property in Tioga County was held in trust by the named grantees. We recognize that many cases deal with the distinction between active and inactive (dry) trusts and hold that if there is an active trust with continuing duties there may be no partition of the title. *Ewalt v. Davenhill,* 257 Pa. 385, 101 A. 756 (1917); *Johnson v. Gaul,* 228 Pa. 75, 77 A. 399 (1910); *Hutchison's Appeal,* 82 Pa. 509 (1876); *Owens v. Naughton,* 23 Pa.Super. 639 (1903). Here, however, while the members held the title to the real estate as "trustees for 'North York Club'", the plain fact is that the North York Club is an unincorporated association and as such it could not hold title to real estate in the name of the organization. *Ladner, supra,* § 3.10. While the taking of title in the names of individuals as "Trustees" for the North York Club may or may not create a valid legal trust, it, together with the constitution and by-laws, makes it apparent that the property was held by the named grantees for the benefit of the present and future membership of the club and was not meant to convey to each grantee all of the rights and incidents of a tenancy in common or a joint tenancy.

\* \* \*

It is evident that the membership used the "as trustees" terminology in taking title to the club property simply as a convenient designation to express their intent that the property was being held for the benefit of the entire membership and that they were not concerned with the complexities of trust law. The club was formed in 1958 by a group of men who were raised together and desired to have a hunting camp for the benefit of the membership. The members met on a regular basis and would, on occasion, go to the camp to do work. The membership changed from time to time. The by-laws regulated the usage of the camp including a provision for safety rules.

The history of the club, the changes in membership without alteration of the club structure, and the conduct of the affairs of the club lead us to conclude that it is intended that the continued operation and ownership of the camp in Tioga County should not be subject to termination by reason of the will of a single member.

\* \* \*

Cases dealing with the rights of club members to assert a direct interest in real estate owned by the association also demonstrate that the test to be applied is the intention of the parties as expressed in their agreements, constitutions or rules. *See Nesbitt v. Litz [Letz] Hunting Club*, 24 Pa. D. & C.2d 706 (1960) (membership in organization held not to include right to transfer ownership to another); *Dutrow v. Bohn*, 15 Pa. D. & C.2d 779 (1958) (evidence indicated that members were treated as having transferable interest in club assets. There was no constitution or bylaws and "[H]ence a court may consider the manner in which the numbers treated or disposed of their interests in the property as showing their construction and understanding of their respective rights therein". 15 Pa. D. & C.2d at 781. Court concluded that each member was considered as having an equal and undivided interest in the leasehold. Partition granted).

We believe that in this case the court erred in entering an order granting partition. An examination of the evidence including the deeds, by-laws and constitution and, importantly, the actions of the club members in dealing with each other and the club's property at the inception of the association and during its existence, leads us to conclude that there is an implied prohibition against partition at the request of one of the members whose name appears on the deed.

*Fuhrman*, 451 A.2d at 531–533.

Moreover, relying on *Fuhrman*, our Supreme Court in *Krumbine, et al. v. Lebanon County Tax Claim Bureau, et al.*, 541 Pa. 384, 663 A.2d 158 (1995), reiterated:

Absent express statutory authority, however, an unincorporated association is not a legal entity; it has no legal existence separate and apart from that of its individual members. *Selected Risks Insurance Co. v. Thompson*, 520 Pa. 130, 135, 552 A.2d 1382, 1385 (1989). In turn, only an entity with a recognized legal existence may own and possess property. *See Sumner v. Brown*, 312 Pa. 124, 128, 167 A. 315, 317 (1933) (partners own property as tenants in partnership and the partnership is not a legal or fictitious person capable of owning property *sui juris*). Accordingly, property ownership by an unincorporated association, which has no cognizable legal existence, is impossible absent statutory authority to the contrary; **rather, an unincorporated association's trustees take legal title to the property for the benefit of the association.** *In re Pittsburg Wagon Works' Estate*, 204 Pa. 432, 54 A. 316 (1903). *See also Fuhrman v. Doll*, 305 Pa.Super. 277, 281, 451 A.2d 530, 532–533 (1982) (property ostensibly owned by an unincorporated association is in reality held by the named trustees for the benefit of the present and future membership of the association); 6 Am.Jur.2d Associations and Clubs § 13; 7 C.J.S. Associations § 35; and 3 P.L.E. Associations and Clubs § 5; 15 A.L.R.2d 1451 (an unincorporated association cannot own property in its own name).

*Krumbine*, 663 A.2d at 160 (footnote omitted) (emphasis supplied).

Here, applying the rationale espoused in *Fuhrman*, and reiterated in *Krumbine*, we determine that Appellants are not entitled to partition the property. As noted in *Fuhrman*, "taking of title [to the property] in the names of individuals as 'Trustees' ... together with ... the by-laws, makes it apparent that the property was held by the name grantees for the benefit of the present and future members of the club and was not meant to convey to each

grantee all of the rights and incidents of a tenancy in common." *Fuhrman*, 451 A.2d at 531. Significantly, Appellants specifically averred that the land was to pass to the surviving member(s) of the original grantees. *See* Complaint, 9/16/13, at 3. Such survival of the grantees' property interest, which eschews the decedents of the deceased original members, precludes a finding of cotenancy. *See Edel v. Edel*, 283 Pa.Super. 551, 424 A.2d 946, 947–948 (1981) ("In a tenancy in common ... when one cotenant dies, his interest descends or passes by will to his heirs or devisees; the remaining co-tenants acquire no additional interest in such an estate.").

Further, Appellants' complaint averred:

**That, [Appellants] and Defendants are presently the eight (8) exclusive members of [Coramike][.].**

Complaint, 9/16/13, at 3–4 (unnumbered) (emphasis supplied). Coramike's bylaws provide, *inter alia:*

### ARTICLE I *Membership*

1. Membership in this Club **shall be limited to fifteen (15) members.**
2. Each member **in good standing—** shall be considered as having **an equal share** in the rights and ownership of the property, and shall be entitled to equal privileges as afforded thereby.
3. **No share or membership shall be transferable or disposed of unless approved by all of the members** at a regular meeting or by Proxy.
4. The Club **reserves the right to purchase any member's share as first choice,** prior to any sale or transfer, or in event of decease of any member.
5. **Any member desiring to resign from membership and dispose of his holdings, shall notify the president of the Club, in writing, of his**

**intentions; where upon the president shall call a meeting of the members to resolve the action.**

\* \* \*

### ARTICLE III DUES

1. The annual dues to be assessed each member shall be two hundred ($200.00) per year payable during the month of January or no later than ninety (90) days after the annual Club meeting. **Any member becoming more than ninety (90) days in arrears shall be notified in writing and upon failure to respond, proper action shall be taken for suspension of rights and privileges.**
2. The valuation of each member's share shall be set at nine hundred and twenty dollars ($920.00) with a sell out value of seven hundred and seventy dollars ($770.00).
3. Any reassessments will be added to the share and sell out value of current members' share. **Upon reassessment of share and sell out values, members have ninety (90) days after notification of reassessment action to pay the identified reassessment fee. Any member becoming more than ninety (90) days in arrears shall be notified in writing and upon failure to respond, proper action shall be taken for suspension of rights and privileges.**

Complaint, 9/16/13, Exhibit B–By Laws of [Coramike], Revised 3/5/11, at 1–2 (emphasis supplied). Thus, while the membership currently stands at eight members, such number is not stagnant and can increase up to 15 individuals, not based on the deed, but by operation of the club's actions in admitting or suspending members. Moreover, the bylaws reflect that only members "in good standing" can share equally in the

"rights and ownership of the property," and that autonomy over the shares and membership is governed by group action and intervention. Accordingly, Appellants are not unrestricted and autonomous owners. Rather, and as expressed in *Krumbine,* Appellants as "an unincorporated association's trustees[,] take legal title to the property for the benefit of the association." *Krumbine,* 663 A.2d at 160. Appellants, therefore, cannot avail themselves of partition, because "[t]he purpose of partition is to afford those individuals who no longer wish to be *owners* the opportunity to divest themselves for a fair consideration." *Beall v. Hare,* 405 Pa. 288, 292, 174 A.2d 847, 849 (1961) (emphasis supplied).

It is of no moment that this case is at a different procedural posture than the *Fuhrman* action; that instantly we are at the preliminary objections stage rather than following trial. Likewise, it is inconsequential to our analysis that this matter does not involve a tax sale as was discussed in *Krumbine.* The certified record contains Coramike's deed and bylaws, the examination of which does not support a finding that Appellants were entitled to partition. We are not persuaded that amendment to Appellants' complaint or a full evidentiary hearing would impact the terms and property rights of record. Further, while Appellants emphasize that their compliance with Pa.R.C.P. 1554 precludes sustaining Coramike's demurrer, Appellants disregard that Pa.R.C.P. 1553 limits a partition action to cotenants, and the plain and unambiguous language of the deed does not confer such status to Appellants.

Order affirmed.